**SIGNED THIS: June 16, 2010**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CENTRAL ILLINOIS ENERGY, L.L.C., | ) | No. 07-82817 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| GARY T. RAFOOL, not individually but as trustee for the estate of Central Illinois Energy, L.L.C., | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 10-8026 |
| | ) | |
| MICHAEL E. EVANS and FROEHLING, WEBER & SCHELL, LLP, formerly doing business as FROEHLING, WEBER, EVANS & SCHELL, LLP, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**O P I N I O N**

This matter is before the Court on a Motion to Abstain filed by the Defendants, Michael E. Evans and Froehling, Weber & Schell, LLP. The Defendants ask the Court to

exercise its right of permissive abstention under 28 U.S.C. § 1334(c)(1), which provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The Plaintiff, Gary T. Rafool (TRUSTEE), Chapter 7 Trustee for the estate of Central Illinois Energy, L.L.C. (DEBTOR), opposes the motion.

The DEBTOR filed a Chapter 11 petition on December 13, 2007. The case converted to Chapter 7 on August 4, 2008. The DEBTOR entity was formed for the purpose of constructing, owning and operating an ethanol production facility and waste-coal fired power generating facility. The DEBTOR hired Lurgi PSI, Inc. (LURGI), as general contractor. LURGI'S performance was secured by two standby letters of credit (the "LOCs") issued by two different banks, one in the amount of $4.6M and the second in the amount of $4.2M. Construction of the facilities was beset by delays and cost overruns, numerous mechanics lien claims were recorded, and construction was never completed.

According to the complaint, the Defendants served as general counsel to the DEBTOR, and when LURGI walked off the job in November, 2007, the Defendants committed legal malpractice by failing to advise or cause the DEBTOR to draw on the LOCs before the bankruptcy petition was filed. The complaint alleges that the LOCs are a "financial accommodation" not assumable in bankruptcy, so that the DEBTOR suffered damages in the amount of the LOCs or $8.8M.

Although not cited in the complaint, Section 365(c)(2) creates an exception to the general rule of assumability of executory contracts for "a contract to make a loan, or extend

2

other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor." 11 U.S.C. § 365(c)(2). Whether a letter of credit is an executory contract within the scope of Section 365, and whether it is a contract to extend "financial accommodations," are often difficult issues of bankruptcy law. The liability of the Defendants depends, at least in part, on the resolution of those issues.

Generally, federal courts should exercise their jurisdiction if properly conferred; discretionary abstention is the exception rather than the rule. *Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993). When considering whether to exercise a right of discretionary abstention, a trial court should consider the following twelve factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Id.*

These factors should be applied flexibly, based upon the particulars of each case. Although no one factor is determinative, "because section 1334(c)(1) is concerned with comity and respect for state law, whether a case involves unsettled issues of state law is always significant." *Id.*

The nature and extent of the Court's jurisdiction over this adversary proceeding is disputed. The TRUSTEE contends that because the legal malpractice claim relates directly to the DEBTOR'S bankruptcy filing, it falls within the Court's "arising in" jurisdiction under 28 U.S.C. § 1334(b), and is a core proceeding under 28 U.S.C. § 157. The Defendants maintain that the action is not a core proceeding and falls under the more attenuated jurisdiction over proceedings that are "related to" the bankruptcy case. Either way subject matter jurisdiction exists, but if only "related to" the bankruptcy case, then a bankruptcy court may not enter a final judgment and must propose findings of fact and conclusions of law to the district court, 28 U.S.C. § 157(c)(1), unless the district court with the consent and upon motion of the parties refers the proceeding to the bankruptcy court to make a final, appealable determination, 28 U.S.C. § 157(c)(2).

Guidance is provided by *In re Repository Technologies, Inc.*, 601 F.3d 710 (7th Cir. 2010), where the chapter 11 debtor's bankruptcy attorneys were sued in an action alleging that they had conspired with the debtor's majority shareholders to use the Chapter 11 case to enrich themselves, thereby abusing the bankruptcy process. Holding that the cause of action was within the lower courts' "arising in" jurisdiction, the Seventh Circuit focused on the fact that the defendants, as debtor's bankruptcy counsel, played more than just "some incidental role" in the bankruptcy case. *Id.* at 721. Although some of the allegations concerned the defendants' prepetition conduct, this was not enough to shift the jurisdictional basis from "arising in" to "related to," since the lawyers served as bankruptcy counsel and "fully litigated the Chapter 11 proceedings," so that the defendants' pre-petition conduct was "inextricably bound" to the bankruptcy case and the claim of abuse of the bankruptcy process. *Id.*

4

Other courts have also found "arising in" jurisdiction over claims against a debtor's attorneys for malpractice committed in the course of the bankruptcy case. *Grausz v. Englander*, 321 F.3d 467 (4th Cir. 2003); *In re Kaiser Group Intern., Inc.*, 421 B.R. 1 (Bankr.D.Dist.Col. 2009); *In re Diversified Contract Services, Inc.*, 167 B.R. 591 (Bankr.N.D.Cal. 1994); *Matter of Billing,* 150 B.R. 563 (D.N.J. 1993), *rev'd on other grounds,* 22 F.3d 1242 (3rd Cir. 1994).

Like the Seventh Circuit, other courts have found that "arising in" jurisdiction encompasses not only claims of legal malpractice for acts committed by bankruptcy counsel during the case, but also for advice given before the filing, to the extent that the advice concerned the bankruptcy case itself. *Kaiser Group Intern., supra; In re Simmons,* 205 B.R. 834, 841 (Bankr.W.D.Tex. 1997).

Based upon these authorities, a claim for legal malpractice against a debtor's bankruptcy lawyer is within the district court's "arising in" jurisdiction, to the extent that the negligent advice, acts or omissions occurred during the bankruptcy case, or before the case so long as they pertained to the bankruptcy filing. In the case at bar, however, the Defendants did not serve as bankruptcy counsel; nor, apparently, was it ever contemplated that they would serve as bankruptcy counsel.[1]

It is also clear that a debtor's claim of legal malpractice against nonbankruptcy counsel for advice, acts or omissions that occurred prepetition and pertained only to a nonbankruptcy issue, only falls within "related to" jurisdiction, even though the claim is

---

[1] The complaint alleges that the DEBTOR also employed Sidley & Austin prepetition, but makes no allegation that Sidley was employed to render advice pertaining to the bankruptcy filing. DEBTOR'S bankruptcy counsel was Barash & Everett, although the complaint alleges that Evans communicated with the directors about whether to retain Barash or Sidley as bankruptcy counsel.

5

an asset of the estate that a bankruptcy trustee could prosecute for the benefit of creditors as a non-core proceeding. *Diamond Mortg. Corp. of Illinois v. Sugar,* 913 F.2d 1233 (7th Cir. 1990) (claim against attorneys who represented debtor prepetition for malpractice involving prepetition conduct did not arise under Title 11, despite contention that the malpractice caused the debtors' insolvency, and thus was only "related to" the bankruptcy case). This conclusion is driven by the fact that the existence of the cause of action is not contingent or dependent upon the bankruptcy case. *See Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858 (1982); *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n.5, 115 S.Ct. 1493 (1995) (proceedings "related to" the bankruptcy include causes of action owned by the debtor which become property of the estate pursuant to section 541).

The case at bar requires the Court to walk the razor's edge. The Defendants were general counsel to the DEBTOR, not bankruptcy counsel. The alleged breach, a failure to properly advise, necessarily occurred prepetition. The substantive issue allegedly missed by Defendants, however, involves the interpretation of a bankruptcy code provision and the effect of bankruptcy on the DEBTOR'S rights. Moreover, the TRUSTEE asserts that the cause of action would not have ripened absent the bankruptcy filing, since the alleged failure to advise of the consequences of bankruptcy on the undrawn LOCs only matters if a bankruptcy case is actually filed.

Applying the reasoning used by the Seventh Circuit in *Repository Technologies,* this Court determines that it has only "related to" jurisdiction over the claim alleged in this adversary complaint.[2] Unlike the bankruptcy attorneys in *Repository Technologies,* the

---

[2] The holding of a case includes, besides the facts and outcome, the reasoning essential to that outcome. *Tate v. Showboat Marina Casino Partnership,* 431 F.3d 580, 582 (7th Cir. 2005).

6

Defendants are alleged to have played no significant role in the bankruptcy case itself. It is a fair implication from the allegations of the complaint to infer that, as general counsel, they may have been involved in the decision whether to file for bankruptcy protection, whom to hire as bankruptcy counsel, and in the days leading up to the filing, that Evans had extensive discussions with Barash about the impending bankruptcy filing. And the complaint necessarily alleges that the Defendants owed the DEBTOR a duty, within the scope of their retention as general counsel, to determine the effect a bankruptcy filing might have on the LOCs and to advise the directors or officers to draw upon them before the bankruptcy petition was filed.

But the Defendants were not retained in the bankruptcy case as professionals to perform legal services for the DEBTOR during the case.[3] The bankruptcy court exercised no authority over their services to the DEBTOR and did not review the reasonableness of their fees, charged prepetition. *Cf. Kaiser Group Intern., supra* (damages sought in malpractice case included disgorgement of all attorney fees and costs paid to the lawyers for work performed during the bankruptcy cases). Under these circumstances, the Defendants were not "inextricably bound" to the bankruptcy case. Instead, the Defendants appear to have played only an "incidental role" in the bankruptcy case. The Court determines, at this stage based upon the pleadings, that the cause of action for legal malpractice against Defendants is not a civil proceeding "arising in" a case under title 11 and is not a core proceeding. It is, instead, "related to" the bankruptcy case.

---

[3] The List of Creditors Holding 20 Largest Unsecured Claims filed by the DEBTOR on January 8, 2008, includes Froehling, Weber, Evans & Schell, LLP as holding an unsecured claim in the amount of $396,054.64, a large interest "adverse to the estate" under Section 327.

7

This determination, based upon the pleadings, is a preliminary one. Federal courts have a continuing obligation to inquire into the basis of subject matter jurisdiction. *Campanella v. Commerce Exchange Bank,* 137 F.3d 885, 890 (6th Cir. 1998). That duty lasts throughout a case. In a close case, the factual basis for a court's subject matter jurisdiction may remain an issue even through trial. *Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London,* 147 F.3d 118, 121 n.1 (2nd Cir. 1998). If a trial discloses facts that affect subject matter jurisdiction, the trial court should reexamine the issue in light of the proven facts. *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1330 (2nd Cir. 1972) (Friendly, C.J.). Thus, a finding that subject matter jurisdiction exists that is based upon the allegations in the pleadings, may be revisited as a factual record develops. *Grunenthal GmbH v. Hotz,* 712 F.2d 421, 422 n.3 (9th Cir. 1983). So it is possible that a subsequent determination could be made that the malpractice claim is a core proceeding within this Court's "arising in" jurisdiction, if warranted by proven facts.

The Court next turns to the broader issue of discretionary abstention under Section 1334(c)(1). This section is based upon traditional notions of abstention that allow a federal court to decline to exercise subject matter jurisdiction over matters that are better resolved in state court or where the interests of justice so demand. *Simmons,* 205 B.R. at 847. Since abstention deprives a plaintiff of its legitimate choice of forum, and imposes duplication of effort and delay on the parties, it should be applied cautiously. *Id.*

Abstention presumes the availability of an alternative forum where the claim may be litigated. *Id.* at 848. The legal malpractice claim against the Defendants has not been filed in state court. After the Court questioned whether such an action would now be time barred, the Defendants agreed to waive the statute of limitations as an affirmative defense.

With an unusual twist, the most important factors in play here are "the extent to which state law issues predominate over bankruptcy issues" and "the difficulty or unsettled nature of the applicable law." True, a claim for legal malpractice is a state law tort action for negligence based upon an attorney's failure to exercise a reasonable degree of skill and care in representing his client. *Davis v. Loftus*, 334 Ill.App.3d 761, 767, 778 N.E.2d 1144, 1149 (Ill.App. 1 Dist. 2002). But legal malpractice is not actionable unless the client suffers a pecuniary injury. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill.2d 218, 856 N.E.2d 389 (2006).

The injury alleged to have been suffered by the DEBTOR is the loss of the right to draw upon the LOCs. Whether that right was indeed lost when the DEBTOR filed for bankruptcy relief, because of Section 365(c)(2) or otherwise, is largely a question of bankruptcy law, and an unsettled one to boot. The better forum for resolution of that critical issue is the bankruptcy court.

The other factors are not as compelling. While the claim could be litigated in state court, it is nonetheless an action by the trustee in bankruptcy to liquidate an asset of the estate for the benefit of creditors, and hearing it will not unduly burden the bankruptcy court. The claim is certainly related to the bankruptcy case, not only jurisdictionally, but factually as well. The absolute right to a jury that the Defendants would have in state court is the most significant factor favoring abstention. But in this Court's view, the factors opposing abstention outweigh that issue.

The Court declines to exercise its right to abstain from hearing this case. The motion will be denied. This Opinion constitutes this Court's findings of fact and conclusions of

law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

###